IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 16-cv-01262-RBJ

BRENDA R. NURRE,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

ORDER

This matter is before the Court on review of the Social Security Administration ("SSA") Commissioner's decision denying claimant Brenda Nurre's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons below, the Court REVERSES and REMANDS the Commissioner's decision.

## I. STANDARD OF REVIEW

This appeal is based upon the administrative record and the parties' briefs. In reviewing a final decision by the Commissioner, the District Court examines the record and determines whether it contains substantial evidence to support the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). A decision is not based on substantial evidence if it is "overwhelmed by other evidence in the record." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). Substantial

evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, reversal may be appropriate if the Commissioner applies an incorrect legal standard or fails to demonstrate that the correct legal standards have been followed. *Winfrey*, 92 F.3d at 1019.

## II. BACKGROUND

Ms. Nurre was born on February 25, 1977. R. 1894. She has a bachelor's degree and speaks English. *Id.*; R. 30. In the past, Ms. Nurre worked as an administrative assistant, bank cashier/teller, and counter clerk. R. 1894. She also served a brief stint in the military. *See* R. 100. However, since her alleged disability onset date of July 1, 2008 through her date last insured of March 31, 2009, Ms. Nurre has not held substantial gainful employment. R. 1886.

According to the record, Ms. Nurre suffers from numerous medical conditions, including the following: "history of partial tear of supraspinatus muscle; status post right knee injury; lumbrosacral strain; right tronchanteric bursitis; migraines; major depression; anxiety disorder; premenstrual dysphoric disorder (PMDD)[.]" *See, e.g.*, R. 1886.

### A. Procedural History

On September 17, 2009 Ms. Nurre filed an application for DIB, alleging disability beginning on July 1, 2008. *See* R. 13, 100–04. Her claims were initially denied on June 7, 2010. R. 13, 58–60. Ms. Nurre subsequently requested a hearing, which was held before Administrative Law Judge ("ALJ") E. William Shaffer on July 19, 2011. R. 27–42. The ALJ denied Ms. Nurre's application on September 16, 2011. R. 13–23. Ms. Nurre then filed a request for review with the Appeals Council. *See* R. 7–9. The Appeals Council rejected Ms. Nurre appeal on September 26, 2012. R. 1–6. The ALJ's decision, however, was subsequently

reversed and remanded on March 31, 2014 by my colleague, Judge Philip Brimmer. R. 1969–80; *Nurre v. Colvin*, 12-CV-03060-PAB, 2014 WL 1292878, at *6 (D. Colo. Mar. 31, 2014).

Plaintiff subsequently had a second hearing. R. 1902–30. In a remarkably similarly decision to his first (almost word for word in parts), the ALJ again found that plaintiff did not suffer from a disability. R. 1884–95. Plaintiff subsequently appealed that second decision to the Appeals Council, which again denied her appeal. R. 1856–64. Ms. Nurre then filed her case in this Court on May 25, 2016. ECF No. 1.

### B. The ALJ's Decision

The ALJ issued a second unfavorable decision after evaluating the evidence according to the SSA's standard five-step process. R. 1884–95. First, the ALJ found that Ms. Nurre had not engaged in substantial gainful activity since her alleged onset date of July 1, 2008. R. 1886. At step two, the ALJ found that Ms. Nurre had the following severe impairments: "history of partial supraspinatus tear; status post right knee injury; lumbosacral strain; right tronchanteric bursitis; migraines; major depression; anxiety disorder; premenstrual dysphoric disorder (PMDD)[.]" *Id*. At step three, the ALJ concluded that Ms. Nurre did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*.

The ALJ then found that Ms. Nurre retained the residual functional capacity ("RFC") to perform "light work" as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> The claimant could stand/walk and sit each six hours of an eight-hour workday, could push and pull with upper and lower extremities within the light exertional level, could not climb ladders, ropes or scaffolds, could occasionally stoop, kneel, crouch and crawl, and needed to avoid concentrated exposure to temperature extremes, vibrations, unprotected heights and unprotected running or operating major manufacturing machinery. The claimant could perform unskilled work. The claimant required decreased interpersonal contact with the general public, co-workers and supervisors no more than occasionally during the workday. For

purposes of the claimant's residual functional capacity, "occasional" means very little up to one-third of the time.

R. 1888.

At step four, the ALJ concluded that Ms. Nurre was not capable of performing any of her past relevant work. R. 1894. Nevertheless, at step five, the ALJ determined that there were other jobs in the national economy that Ms. Nurre could perform, such as a mail clerk (non-postal), electronics worker, and a small product assembler. R. 1895. Accordingly, the ALJ found that Ms. Nurre was not disabled. *Id.*

### III. ANALYSIS

Ms. Nurre makes four arguments on appeal. First, she contends that the ALJ did not properly evaluate the opinions of Dr. Steven Bonney and Dr. Nancy Franzoso. ECF No. 12 at 20–28. Second, she argues that the ALJ did not have valid reasons for giving greater weight to the opinions about plaintiff's mental limitations by non-examining physicians compared to those by plaintiff's treating sources. *Id.* at 29–31. Third, she argues the ALJ failed to properly consider and assess the limiting effects of plaintiff's migraines. *Id.* at 32–34. And finally, she contends that the ALJ improperly failed to follow the mental limitations contained within the opinions to which he afforded the most weight. *Id*. at 34–37. Finding that at least plaintiff's first argument is persuasive and warrants reversal, the Court REVERSES and REMANDS the Commissioner's decision.[1]

---

[1] Finding plaintiff's first argument for reversal persuasive and acknowledging that plaintiff's other arguments (namely, plaintiff's second argument) hinge on the ALJ's assessment of the opinions of Dr. Bonney and Dr. Franzoso, the Court does not reach plaintiff's remaining arguments on appeal. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."). On remand, however, the Court recommends that the ALJ evaluate all of the issues plaintiff has raised.

4

### A. The ALJ Improperly Assessed the Opinions of Dr. Bonney.

An ALJ is required to review and assign "weight" to every medical opinion contained in the record. *See* 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive). "Weight" is assigned according to the six factors and framework set out in 20 C.F.R. § 404.1527(c). Although an ALJ need not recite and assess each one of those six factors with respect to every opinion in the record, the ALJ "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the . . . opinion and the reasons for that weight." *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (finding that "the ALJ offered no explanation for the weight, if any, he gave to . . . [the plaintiff's] treating physician" and that a remand was therefore warranted). Those reasons, however, must be "good ones." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Here, the ALJ provided four main reasons for rejecting Dr. Bonney's opinions about plaintiff's mental condition.[2] First, he found Dr. Bonney's opinions were inconsistent with respect to how long plaintiff suffered from "severe" limitations. R. 1891. Second, he explained that the persuasiveness of Dr. Bonney's opinions was weakened because, in the ALJ's opinion, a person with the limitations Dr. Bonney ascribed to plaintiff would normally be expected to be institutionalized. *Id*. Third, he rejected Dr. Bonney's opinions as mere "check form" ones. *Id*. And finally, the ALJ explained that he assigned these opinions "little weight" because Dr. Bonney's notes and other evidence did not support the limitations he assigned to plaintiff. *Id.*

---

[2] Defendant tries to save the ALJ's decision by arguing that the ALJ properly rejected Dr. Bonney's opinions because they relied entirely on plaintiff's subjective complaints. *See* ECF No. 13 at 9. The ALJ, however, did not make this fifth argument for rejecting Dr. Bonney's opinions in his decision. Thus, this argument is a *post hoc* attempt to save the ALJ's decision and is one I cannot therefore consider. *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) ("[T]he district court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself.") (citations omitted).

While those reasons for giving Dr. Bonney's opinions "little weight" are for the most part clear enough, but see *infra* note 3, I nevertheless find that reversal is warranted because I am not able to conclude that they are "good reasons." *See Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) ("[T]he regulations require that the ALJ 'give good reasons' in the notice of determination or opinion for the weight that is given the treating physician's opinion."); *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (quotation omitted) ("When an ALJ decides to disregard a medical report by a claimant's physician, he must set forth 'specific, *legitimate* reasons' for his decision.") (emphasis added).

For starters, the ALJ's decision is simply wrong that Dr. Bonney's opinions on plaintiff's condition are internally inconsistent on how long plaintiff has suffered severe limitations. The basis for that finding appears to the ALJ's contrasting Dr. Bonney's opinion in July of 2010 that plaintiff's mental impartments could be characterized at certain levels of severity since February 2007 with Dr. Bonney's later opinion in June of 2011 that plaintiff was unable to complete full-time work and needed to be off task for 99% of the day since February 2009. *Compare* R. 1387–89 *with* R. 1850–51. In his latter opinion, however, Dr. Bonney explained that it was the *frequency* of plaintiff's bouts of depression that had worsened such that by February of 2009 plaintiff "was *constantly* and severely depressed" and could not attend work. R. 1851 (emphasis added). Given that explanation, Dr. Bonney's two opinions actually coincide—plaintiff suffered from *intermittent* impairments since February of 2007 that increased in frequency starting in 2009. *See id.* The severity of these impairments, however, remained unchanged. *See id.*; R. 1850 (answering "yes" to the question of "whether the patient's mental impairment remains at the same severity since you complete[d] the form dated" July 13, 2010).

6

Next, the ALJ contends that Dr. Bonney's opinion lacks credibility because "an individual with the level of limitations assessed in [his] July 2010 opinion would normally be expected to be institutionalized." R. 1891. It is not clear from what source the ALJ draws support for that comment. It seems to be simply the ALJ's opinion, and if so, it is of questionable significance. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*.") (emphasis in original) (internal quotation marks and citation omitted).

The ALJ's third reason—that Dr. Bonney's opinions are mere "check forms"—is undermined by the record. *See* R. 1387 (providing narrative explanation of the "clinical signs and examination findings" Dr. Bonney observed that led to his opinion).

The ALJ's fourth argument is that Dr. Bonney's limitations are not supported by his own notes and other evidence. I tend to agree with the plaintiff here that in reaching this conclusion the ALJ cherry-picked from Dr. Bonney's observations and the record. For instance, the ALJ points out that Dr. Bonney apparently observed in January 2009 that plaintiff's sleep had improved substantially, and that this observation undermined his ultimate conclusion.[3]

---

[3] I use the word "apparently" because the ALJ cites "Exhibit 5F" as the source for this piece of evidence. "Exhibit 5F," however, is over 1,000 pages long. *See* R. 281–1378. After glancing through this part of the record, I am unable to find what page the ALJ is referencing here. *See Phillips v. Colvin*, 67 F. Supp. 3d 1286, 1291 (D. Colo. 2014) ("Although the ALJ claimed that [the physician's] treatment notes did not support the limitations he imposed, he failed to explain that conclusion with specific reference to the evidence. Instead, he cited the entirety of Exhibit 3F, a document comprising more than 100 pages of treatment notes . . . . Just as '[j]udges are not like pigs, hunting for truffles buried in briefs,' . . . this court is neither authorized nor inclined to search the administrative record in search of evidence which might lend support to the ALJ's decision.") (quoting *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995)).

However, on January 20, 2009 Dr. Bonney stated that plaintiff "reported poor sleep [with] insomnia and wakening in the night"—an observation supportive of Dr. Bonney's opinions that the ALJ did not note. R. 1267; *see also* R. 1207 (reporting on March 31, 2009 that plaintiff's mood was "profoundly depressed and her affect restricted with frequent tears and hand-wringing").

**B. The ALJ Improperly Assessed the Opinion of Dr. Franzoso.**

Plaintiff argues that the ALJ improperly rejected the opinion of Dr. Franzoso in reaching his decision of no disability. I agree. With respect to Dr. Franzoso's opinion that plaintiff was profoundly depressed, the ALJ gave but one reason for assigning that opinion "limited weight:" it was inconsistent with some of Dr. Franzoso and Dr. Bronney's descriptions of plaintiff. R. 1892. That is, Dr. Franzoso's opinion was inconsistent with his description of her as "generally polite, cooperative and apologetic" and Dr. Bonney's descriptions of plaintiff as "pleasant and conversational." *See id.* In reaching that conclusion, the ALJ essentially disregards contrary medical evidence in the record that plaintiff did in fact suffer from severe depression. *See, e.g.*, R. 1204–08. I find that a remand is warranted for that additional reason as well.

**ORDER**

For the reasons described above, the Court REVERSES and REMANDS the Commissioner's decision denying Ms. Nurre's application for Disability Insurance Benefits.

DATED this 30th day of May, 2017.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge